IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Roosevelt Guy, et al., | Case No. 3:14 CV 119 |
| Plaintiffs, | MEMORANDUM <u>OPINION AND ORDER</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Spader Freight Services, | |
| Defendant. | |

### INTRODUCTION

Plaintiff *pro se* Roosevelt Guy claims Defendant Spader Freight Services discriminated against him based on his race when it terminated him from his position as a truck driver following his failure to complete a random drug test. Spader Freight moves for summary judgment (Doc. 75). Guy opposes and cross-moves for judgment on the pleadings (Doc. 79). Spader Freight replies (Doc. 82). During a Record Telephone Hearing on November 7, 2016, Spader Freight withdrew its statute of limitations defense; accordingly, this Court denied that portion of the Motion for Summary Judgment (Doc. 86). Spader Freight's arguments on the merits of Guy's Title VII claim remain.

### BACKGROUND

Guy, an African-American, began working as a truck driver for Spader Freight in September 2006. Six years later, he was terminated for refusing to take a random Department of Transportation ("DOT") drug test. Spader Freight's employee handbook, which Guy reviewed and signed at the start of his employment (Doc. 75-2), requires employees to submit to random drug and alcohol testing (Doc. 75-5 at 7). The handbook also explains that refusing to comply with a random test, or delaying completion of the test, is grounds for termination (*id.* at 11). Spader Freight is governed by DOT and

Federal Motor Carrier Safety Administration ("FMCSA") regulations. Those regulations provide that if an employee refuses or fails a random DOT drug test, the employer may not return him to work until he is evaluated by a substance abuse professional, complies with any prescribed treatment, and passes a return-to-duty test. 49 C.F.R. §§ 40.305, 382.503. Guy was aware of these regulations (Docs. 75-8, 75-9, 75-10 at 17).

Spader Freight contracts with a third party, HireRight, to manage its random drug tests (Doc. 75-3 at ¶ 5). Spader Freight provides the names and Social Security numbers of its drivers, and HireRight randomly selects which drivers will be tested each quarter (*id.* at ¶¶ 5–6). Guy was one of the employees selected for a random drug test for third quarter 2012 (Doc. 75-11). He was scheduled to be tested on September 12, 2012, the same date as his mandatory biennial DOT physical (Doc. 75-3 at ¶ 7; Doc. 75-13). Spader Freight Safety Director Steve Schwiebert scheduled both appointments at the same clinic (*id.*).

DOT best practices caution against providing advance notice of selection for random drug and alcohol screens (Doc. 75-30). Schwiebert's general practice was to personally notify employees on the date of testing (Doc. 75-14 at ¶¶ 3–4). However, on September 12, Schwiebert had a staff meeting with upper management at the same time as Guy's appointment (*id.* at ¶ 5). Just before the meeting began, Schwiebert realized he had not told Guy about the random drug test (*id.* at ¶ 6). Since Guy was already at the clinic for his physical, Schwiebert asked clinic staff to notify him (*id.* at ¶ 8).

Clinic staff told Guy he had been randomly selected for a DOT drug test, per Schweibert's instruction. Guy resisted and argued to the nurse that he could not have been selected for a random test because he received no prior notification from Spader (Doc. 75-10 at 20–21). Guy admits he believed Schwiebert told the clinic he had been randomly selected (*id.* at 24). Yet he also attempted to call Schwiebert, who was still in the staff meeting, to confirm his selection for the drug screen (*id.*

2

at 23). Feeling he was unfairly targeted, Guy refused to submit to the test and left the clinic (*id.*). He acknowledges he knew this would be considered a refusal to test, which is treated the same as a positive screen (*id.* at 26).

The clinic told Schwiebert that Guy refused the drug test (Doc. 75-3 at ¶ 9). A few minutes later, Guy also called Schwiebert to complain he had not been notified of the random test (*id.* at ¶ 10). Schwiebert confirmed Guy had been randomly selected and was required to complete the drug test that day (*id.* at ¶ 11). Guy responded that he was not prepared to take a drug test and hung up (*id.*). Schwiebert tried to call Guy back, but he did not answer (*id.* at ¶ 13). Guy did not report to work for any of his scheduled shifts, nor did he return to the clinic to take the test (*id.*). Five days later, Schwiebert sent Guy a letter informing him that, due to his refusal to test, he was prohibited from performing any DOT safety-sensitive duties until he completed a substance abuse evaluation (*id.* at ¶ 15). Based on its policy, Spader Freight considered this to be a termination letter (*id.*). Spader Freight has fired employees for failing random drug screens (*see* Doc. 75-17), but it has no record of any other employee refusing to test (Doc. 75-3 at ¶ 17).

Following his termination, Guy complained to the Ohio Department of Transportation ("ODOT") that he had not been properly notified of the random drug test (Doc. 75-3 at ¶ 19). An ODOT representative contacted Schwiebert and questioned whether the notification was proper because it was initially provided by the clinic, rather than Spader Freight (*id.* at ¶ 20). Spader Freight maintains the notification was proper. Nevertheless, the ODOT representative instructed Schwiebert to send Guy a letter rescinding its refusal-to-test determination based on "miscommunication" surrounding the drug test (*id.* at ¶ 21). Schwiebert complied with ODOT's instruction (*id.* at ¶ 23).

Guy claims he was discriminated against based on his race because Spader Freight failed to directly notify him of the random drug test. On July 2, 2013, he submitted a handwritten letter to the

3

EEOC summarizing his claim (Doc. 41-2). He supplemented this letter with a verified Charge of Discrimination dated July 26, 2013 (Doc. 29-2). After his EEOC Charge was dismissed, Guy filed this lawsuit. This case was originally assigned to Judge David Katz, who dismissed the original Complaint in its entirety (Doc. 3). The Sixth Circuit affirmed on all counts except Count Six, which raised a Title VII disparate-treatment claim (Doc. 7). Guy filed an Amended Complaint, adding several new parties and claims (Doc. 27). Judge Katz dismissed in part and limited the Amended Complaint to those allegations included in the EEOC Charge -- namely, whether Spader Freight discriminated against Guy by failing to notify him of the random drug test (Doc. 47). The case was reassigned to this Court (Doc. 67).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," such that the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). This Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court does not weigh the evidence or determine the truth of any matter in dispute; rather, it evaluates only whether the record contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## DISCUSSION

To establish a *prima facie* case of race discrimination under Title VII, Guy must show (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he suffered an adverse employment action, and (4) he was treated less favorably than similarly situated, non-protected employees. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). Once Guy establishes a *prima facie* case, the burden shifts to Spader Freight to identify a legitimate, non-

discriminatory reason for the adverse employment action.  The burden then swings back once more to Guy, to demonstrate Spader Freight's offered reason is pretextual.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).  Guy may establish pretext by showing (1) Spader Freight's stated reason for terminating him had no basis in fact, (2) the stated reason was not the actual reason, or (3) the stated reason was insufficient to justify the adverse employment action.  *Id.*

Spader Freight concedes Guy is a member of a protected class and suffered an adverse employment action.  However, it contends he cannot make out a *prima facie* case of discrimination because he was not treated less favorably than other similarly situated employees, nor was he qualified for the position in the first place.  Alternatively, Spader Freight also argues it had a legitimate, non-discriminatory reason for terminating Guy, and Guy cannot identify any evidence of pretext.

**Similarly Situated Employees**

Spader Freight contends Guy failed to establish he was treated less favorably than other, similarly situated employees who are not members of a protected class.  Spader Freight represents it is unaware of other employees of any race who refused a random drug test; thus, there are no "similarly situated" employees available for comparison.  To the extent failing a drug test is sufficiently similar to Guy's circumstances, Spader Freight notes it has terminated white employees on this basis (Doc. 75-3 at ¶ 18).

Guy frames the issue differently.  He claims Spader Freight treated him less favorably than non-protected employees because it failed to notify him directly of his selection for the random drug screen, instead delegating the task to clinic staff at the time of his appointment.  Though delegation is permitted under the regulations, Spader Freight's policy provides that "[i]f a driver is selected at random, for either drug or alcohol testing, a Company official will notify the driver" (Doc. 75-5 at 8).

5

Spader Freight does not contest that -- due to extenuating circumstances -- this policy was not followed for Guy's September 12 drug test.

Yet Guy overlooks a key element of his burden at this stage: he must show he was treated not just differently, but *less favorably* than other individuals not in his protected class. *Clayton*, 281 F.3d at 610 (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). Guy points to no evidence suggesting he was somehow disadvantaged by initially receiving his notification from clinic staff as opposed to Schwiebert. After all, Spader Freight's policy provides that "once notified, every action the driver takes leads to a collection. If the driver engages in conduct that does not lead to a collection as soon as possible after notification, such conduct may be considered a refusal to test" (Doc. 75-5 at 8). Nor does Guy dispute that after Schwiebert confirmed he was randomly selected and was required to screen that day, he did not return to the clinic to complete the drug test. In short, Guy fails to demonstrate that under the circumstances, the notification he received -- twice -- treated him less favorably than similarly situated, non-protected employees.

**Qualified Employee**

Further, though it was not a basis for the termination decision, Spader Freight also asserts Guy was not qualified for the truck driver position because information obtained through discovery reveals he lied during his mandatory DOT physicals by failing to disclose certain mental health conditions and medications. To maintain a commercial driver's license, DOT regulations require drivers to be "medically certified as physically qualified." 49 C.F.R. § 391.41(a)(1). A driver is physically qualified if, among other things, he has "no mental, nervous . . . or psychiatric disorder likely to interfere with [his] ability to drive." *Id.* § 391.41(b)(9). FMCSA guidance provides that "deliberate omission or falsification of information [on a DOT physical] may invalidate the examination and any

6

certificate based on it" (Doc. 75-28; *see also* 49 C.F.R. §§ 390.35, 391.43) -- thus rendering an employee unqualified to drive.

Accordingly, Guy is unable to establish he was a qualified employee at the time of his termination.

**Legitimate Business Reasons for Termination**

Moreover, even if Guy had established a *prima facie* case for discrimination, Spader Freight identifies a legitimate, non-discriminatory reason for Guy's termination. DOT regulations provide that if a driver refuses to immediately submit to a random drug test, the employer is prohibited from allowing the driver to continue performing safety-sensitive duties. 49 C.F.R. §§ 382.211, 382.305. Spader Freight's own policy also provides that refusing to submit to a random drug test will result in removal from service and possible termination (Doc. 75-5 at 6).

Guy appears to rely on the communications between ODOT and Schwiebert to demonstrate that Spader Freight's "refusal to test" determination was invalid, and perhaps pretextual. However, based on the description in the record, ODOT's involvement in this matter was limited to an informal attempt to facilitate a resolution to the dispute (*see* Docs. 75-3, 75-12). Neither side suggests ODOT opened an official investigation, formally reviewed the merits of the claim, or issued any legal conclusions. Further, any impression that Guy did not refuse to take the drug test is belied by his deposition testimony in this matter (*see* Doc. 75-10 at 22–23). Thus, Guy offers no evidence suggesting the stated reason for his termination was pretextual.

## CONCLUSION

Spader Freight's Motion for Summary Judgment (Doc. 75) is granted. Guy's Motion for Judgment on the Pleadings (Doc. 79) is denied.

IT IS SO ORDERED.

                                                     s/ *Jack Zouhary*
                                                     JACK ZOUHARY
                                                     U.S. DISTRICT JUDGE

January 3, 2017